No. 3809

Second Circuit

HARPER v. OUACHITA NEHI BOTTLING CO.

(June 2, 1930. Opinion and Decree.)
(July 5, 1930. Rehearing Refused.)

Julius T. Long, of Shreveport, and D. J. Anders, of Winnsboro, attorneys for plaintiffs, appellants.

Munholland & Munholland, of Monroe, attorneys for defendant, appellee.

ODOM, J. These plaintiffs were both seriously injured when the Ford car in which they were riding collided with defendant's motortruck on a highway. They

sue for damages and appeal from a judgment rejecting their demands.

Mr. Harper, who was sixty-four years old, and his daughter, Inez, who was fifteen, left Winnsboro late in the afternoon on October 13, 1928, in a Ford car and drove north on a graveled highway to Crowville, about eight miles away, the daughter driving with the father on the front seat with her. They reached Crowville at about 7:30, after dark, and at a point about twenty feet south of the Bass garage and filling station, which is east of and adjacent to the highway, and therefore on their right-hand side, their car collided with defendant's truck, which was being driven in the opposite direction, or south, towards Winnsboro. Plaintiffs allege and contend that the truck driver left his side and turned southeast, angling across the road, and ran the truck against their car over on the east, or their right-hand side of the road. Defendant alleges and contends that Miss Harper, driver of the Ford, left her side of the road, turned to the left, angling across in a northwesterly direction, and ran the Ford against the truck over on the west side of the road—defendant's right-hand side.

Crowville is a small village or settlement on the highway with several business establishments such as stores, filling stations, a garage, and an icehouse, situated along the edge or side of the road, and we gather from the testimony that there are also residences located near the road. The road is straight and is twenty-four feet wide, and there was, therefore, room enough for the Ford and the truck to pass if each had kept its side. Each vehicle was equipped with lights. The driver of the Ford saw the truck, or rather its lights, and the driver of the truck saw the Ford, and, notwithstanding that, the two vehicles collided. Plaintiffs contend that the collision was due to the fault and negligence of the truck driver; defendant contends that it was due solely to the fault and negligence of Miss Harper, who was driving the Ford.

A careful reading of the voluminous record convinces us that the collision was due to the fault and negligence of plaintiffs. The testimony establishes beyond question that the Ford car left its side of the road, turned to the left and ran into the truck over on its side. Young Greer, the truck driver, says that is the way it happened. Miss Harper and her father both testified to the contrary; but they are unquestionably mistaken. There would be room for doubt on this point, in view of the conflicting testimony, if the physical facts did not prove it.

The vehicles went together at an angle —not head-on. The left front of the Ford collided with the left front wheel of the truck. That is admittedly true. When the vehicles came to rest, they were both over on the east or plaintiffs' right-hand side of the road. The truck was standing in the road angling about forty-five degrees facing southeast, with the front wheels near the ditch at the edge of the road. The Ford was out of the road, with its rear end across the ditch and its front wheels in the ditch. All the testimony shows that the truck shoved the Ford back about fifteen feet. Counsel for plaintiffs argue that these facts prove their case—that is, that the truck left its side of the road, ran angling across and hit the Ford over on its side of the road and that the Ford did not leave its side at all, did not swerve. Both Miss Harper and her father testified that the Ford when struck was not only close to its side of the road, but was headed straight up the road and did not swerve. But, in view of other undisputed

testimony and the physical facts, that cannot, we think, be true.

All the testimony shows that the truck immediately prior to the collision was moving south on the west side of the road and that it turned to the left and went angling across at about forty-five degrees to where it stopped after the collision, and that, in going across, it shoved the Ford back, not to the side, but back. Admittedly, it was the front ends of the vehicles which collided. Now if the Ford had been going straight ahead, north, when the truck, going angling forty-five degrees across, struck it on the front end, the front end of the Ford would have been knocked or shoved off the road farther than the rear end. The rear end of the Ford was not touched, and only one front wheel of the truck collided with the Ford and that at the front end. The back end of the Ford was not hit by the truck, and it was not shoved sideways off the road. The Ford, when it came to rest, was across the ditch, except the front wheels which were in it. Plaintiffs proved that by their witnesses De Witt Harper, a brother of one of the plaintiffs and the son of the other, who was called by plaintiffs, makes this clear. On page 101 of the testimony, he said:

"Well, the car my father and sister were in was completely across the ditch except the front end was in the ditch on their right hand side of the road and the truck, the front end was jammed against it."

Mr. Fox, who was riding in the Ford with the Harpers, said (page 65 of the evidence) that the truck pushed the Ford backwards into the ditch, and on page 66 was asked if the Ford was knocked across the ditch, and he said:

"Yes, in the ditch I don't know—the back end wasn't up on the bank on the other side; the ditch was shallow there. I believe the front wheels were down in the ditch."

Mr. Spearman, another witness called by plaintiffs, said (on page 131):

"The wrecked car was knocked on the east side of the road, the rear being knocked across the ditch on the east, and the front wheels of the car was in the ditch and the left front wheel spokes broken in it. * * *"

As stated, when the vehicles came to rest, the left front wheel of the truck was jammed against the front end of the Ford on its left front end. The witnesses, in speaking of the collision, say that the truck "pushed," "shoved," or "knocked" the Ford back across the ditch, not sideways across it. In other words, the Ford was rolled back and left with its front wheels in the ditch and the rear wheels over across. For this to happen, the Ford must have been fronting at an angle across the road while being shoved back. It could not have been fronting straight north up the road; if it had been, the impact would have shoved the front end off the road and the front end would have been farther over than the rear end. This view is in accord with defendant's theory as detailed by the truck driver, Greer. He says that he was proceeding south on his right-hand or west side of the road; that he saw the Ford coming towards him; that he was not blinded by the lights; and that, when some distance away, he saw the Ford swerve to its left, angling across the road towards him, and he assumed that the driver would turn back to the right-hand side, but she did not; that the left front wheel of plaintiffs' car hit the left front wheel of the truck and knocked it back under the fender which caused both front wheels of the truck to cut to the left, angling southeast across the

road; that the impact broke the steering device of the truck so that he could not cut the wheels to the right; that it was a heavy truck, heavily loaded, and that its momentum carried it angling across the road shoving the Ford back. The mechanic and all others who testified on the point said that in some way the front wheels of the truck were literally locked in this angling position, and some say that they had to be pried apart with a bar of iron, although the wheels would revolve. When the wheels became set in that position, the truck necessarily moved at an angle across the road. This theory is consistent with the physical facts which we have mentioned, that is, that the Ford was backed across the road and over the ditch at an angle. It having been shoved back at an angle, it must have been going at an angle when the collision took place.

Miss Harper and her father say that their car did not turn across the road. They are no doubt honest in that statement, but, as we have said, they are unquestionably mistaken. The facts are, as stated by themselves, that they were so completely blinded by the lights of the truck that they could not tell what course their car took immediately prior to the collision. They both say they were blinded. Miss Harper says that she ran fifty or sixty feet while she was blinded by the lights of the truck, that she could see practically nothing except the lights; that she leaned to the right towards her father trying to keep the lights from her eyes. Blinded and confused as she was, she could not tell just what direction the car took. We think that when she leaned over towards her father, she momentarily and unconsciously lost control of the car, and that it swerved to the left across the road.

Defendant attempted to prove that Miss Harper deliberately turned to the left in order to stop at her brother's store, which was on the left side of the road farther up. The testimony to that effect is not convincing. We accept the testimony of plaintiffs that they intended to stop at the Bass garage, which was on the east side of the road.

There is other testimony and other physical facts tending to support defendant's contention that plaintiffs were at fault and that the collision took place over on the west or defendant's side of the road. Mr. Fox was a guest passenger in the Harper car, riding on the back seat. He was paying but little attention, did not see the truck until the two vehicles were almost together. However, we are convinced that he thought Miss Harper was at fault. He was a witness in the case called by plaintiffs and was asked if he did not state after the accident that she was at fault, and he said that he did not remember. But after the accident he told Moore and Jackson that she was. He told Ezell that from the "leaning of the car" it must have turned to the left.

Again, there is testimony that there were skid marks or scars on the road west of the center where Greer says the collision took place. After the collision, the truck was rolled back across the road to the west side, and it followed closely the tracks it had made when it crossed, because the front wheels were still set at the same angle. People had tramped the road and no doubt cars had passed before these observations were made, and the marks on the east of the center of the road were practically obliterated. But on the west of the center near where the truck was standing after being moved back the skid marks were plain. One witness said that the surface of the road was plowed up.

The truck was loaded with "Nehi" bottles (Nehi is a cold drink). Bottles were picked up from the ditch on the west side of the road and put back on the truck. Evidently they fell from the truck at the moment of the collision. If the collision had taken place on the east side of the road, as plaintiffs claim it did, it is inconceivable that the bottles would have fallen into the ditch on the west side of the road. The windshields of the truck and of the Ford were shattered and bottles were broken. There was broken glass all over the road, east side, center, and west side.

We have considered plaintiffs' contention that there was a car parked on the west side of the road in front of the Bass garage, and the contention that the driver of the truck, in order to miss this parked car, swerved to the left and ran against the Ford. The testimony as to whether there was a parked car there is very conflicting. Our conclusion, however, is that there was. Mr. Bass, the owner of the garage just across the road, who was at his place of business at the time, but did not see the collision, says the car was there. He was very positive in the statement and his testimony, taken in connection with that of other witnesses, convinces us that a car was parked there. But the presence of that car did not cause the truck driver to swerve. He says that he did not see it. If his testimony on that point be discredited, the fact remains that the Harper car turned to the left across the road and the collision took place over on the west side.

The district judge in a written opinion reviewed all the facts and held that under the facts plaintiffs cannot recover. We think his judgment is correct, and it is therefore affirmed, with all costs.